UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| INDIANAPOLIS FRUIT COMPANY, INC. an Indiana corporation,<br><br>Plaintiff,<br><br>v.<br><br>MIDWEST GOURMET FOODS, LLC, formerly d/b/a FOX & OBEL FOOD MARKET, VULPES LLC, currently d/b/a FOX & OBEL FOOD MARKET, and CARY ATTAR, KEITH MONTAGUE and WILLIAM BOLTON, individually<br><br>Defendants. | Case No.<br><br>FILED: MAY 1, 2008<br>08cv2486 J. N.<br>JUDGE ANDERSEN<br>MAG. JUDGE KEYS |

## COMPLAINT

For its Complaint, Indianapolis Fruit Company, Inc., states as follows:

## THE PARTIES

1. Plaintiff is Indianapolis Fruit Company, Inc. ("Plaintiff"), which maintains offices in Indianapolis, Indiana.

2. Plaintiff sells wholesale quantities of perishable agricultural commodities ("Produce") in interstate commerce.

3. Defendants are:

a) Midwest Gourmet Foods, LLC ("Midwest Gourmet"), formerly d/b/a Fox & Obel Food Market ("Fox & Obel"), an entity that purchased and/or sold Produce in wholesale or jobbing quantities;

b) Cary Attar ("Attar"), in his individual capacity, and a person in a position to control Midwest Gourmet;

c) Keith Montague ("Montague"), in his individual capacity, and a person in a position to control Midwest Gourmet and/or Fox & Obel;

    D) Vulpes, LLC, currently d/b/a Fox & Obel Food Market ("Vulpes"), an entity that purchased assets from Midwest Gourmet; and,

    d) William Bolton ("Bolton"), in his individual capacity, and a person in a position to control Vulpes, LLC.

(Attar, Montague and Bolton are collectively referred to as "Principals") (Midwest Gourmet, Vulpes and the Principals are collectively referred to as "Defendants")

## JURISDICTION AND VENUE

4. The District Court has jurisdiction over this civil action arising under the Perishable Agriculture Commodities Act ("PACA"), 7 U.S.C. § 499e(c)(5), pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. § 1367(a).

5. Venue in this District is based on 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

6. Plaintiff sold to Midwest Gourmet and Midwest Gourmet purchased from Plaintiff, Produce having a current total aggregate value in the amount of $24,425.62[1] plus further interest and collection costs, including attorneys' fees.

7. The Produce identified above was sold pursuant to the invoices issued by Plaintiff summarized in the chart attached hereto as Exhibit 1.

8. Produce Purchasers received from the Plaintiff the invoices referenced in paragraph 7.

---

[1] All references to this amount include interest and estimated collection costs, including attorneys' fees, as itemized with current invoice balance in the chart attached in Exhibit 1.

2

9. The Plaintiff sent to Midwest Gourmet, and Midwest Gourmet received and accepted, the Produce identified in the invoices referenced in paragraph 7.

10. Midwest Gourmet failed to pay the Plaintiff for its Produce despite repeated demands.

11. Subsequent to Midwest Gourmet receiving Produce from Plaintiff, Midwest Gourmet sold assets of Fox & Obel to Vulpes.

12. Vulpes took possession of Midwest Gourmet's assets as they pertain to the Fox & Obel, including assets subject to the statutory trust created pursuant to PACA.

13. At the time Vulpes took possession of Midwest Gourmet's Fox & Obel assets, Vulpes knew or should have known that the assets were subject to the PACA trust and knew or should have known that Midwest Gourmet was in poor financial condition and that Midwest Gourmet had failed to pay its Produce suppliers.

14. Plaintiff is an unpaid supplier or seller of Produce having sold Produce to Midwest Gourmet for which Plaintiff remains unpaid.

15. Plaintiff operated its business under a valid PACA license issued by the United States Department of Agriculture ("USDA") and its invoices contained the required statutory language and were sent to Produce Defendants within the statutory time limits, sufficient to preserve Plaintiff's PACA trust rights.

16. Pursuant to PACA, 7 U.S.C. § 499e(c), Plaintiff is a beneficiary of a statutory trust *res* designed as a fund from which it can be assured payment. The trust became effective at the time Midwest Gourmet first began accepting shipments of Produce.

## COUNT I.

### ENFORCEMENT OF THE PACA TRUST
### 7 U.S.C. § 499e(c)(4)

### The Defendants

17. Plaintiff re-alleges paragraphs 1 through 16.

18. The Defendants are in possession, custody and control of PACA trust assets for the benefit of Plaintiff and other similarly situated PACA trust beneficiaries.

19. The Defendants failed to pay Plaintiff from the PACA trust assets for the shipments of Produce referenced in paragraph 7.

20. The Defendants failed to maintain sufficient trust assets to fully satisfy all qualified PACA trust claims such as the Plaintiff's unpaid claims asserted in this action.

21. As a direct result of the Defendants' failure to properly protect the PACA trust assets from dissipation, Plaintiff suffered damages, which are covered under the PACA trust in the current amount of $24,425.62, plus further interest and collection costs, including attorneys' fees.

22. Plaintiff seeks the entry of an Order directing the Defendants to immediately turn over to Plaintiff, as beneficiary of this trust, an amount of the PACA trust *res* equal to the sum of $24,425.62, plus further interest and collection costs, including attorneys' fees.

## COUNT II.

### BREACH OF CONTRACT

### Midwest Gourmet

23. Plaintiff re-alleges paragraphs 1 through 16.

24. Plaintiff and Midwest Gourmet entered into contracts under which Plaintiff agreed to sell the Produce and Midwest Gourmet agreed to purchase the Produce, referenced in paragraph 7 above.

25. Midwest Gourmet failed to pay for each shipment of Produce in the aggregate amount of $24,425.62.

26. Plaintiff seeks entry of an Order directing Midwest Gourmet to immediately pay the current sum of $24,425.62 to the Plaintiff, plus further interest and collection costs including attorneys' fees.

## COUNT III.

## BREACH OF FIDUCIARY DUTY TO PACA TRUST BENEFICIARIES

### The Principals

27. Plaintiff realleges paragraphs 1 through 16.

28. At all times relevant to this action, Attar was a person in a position to control substantially all aspects of Midwest Gourmet's business undertakings.

29. Attar controlled and managed Midwest Gourmet's business operations and had control over Midwest Gourmet's financial dealings, including those involving the PACA trust assets.

30. Attar had full knowledge and responsibility for the handling of Midwest Gourmet's PACA trust undertakings.

31. At all times relevant to this action, Montague was a person in a position to control substantially all aspects of Midwest Gourmet and/or Fox & Obel's business undertakings.

32. Montague controlled and managed Midwest Gourmet and/or Fox & Obel's business operations and had control over Midwest Gourmet and/or Fox & Obel's financial dealings, including those involving the PACA trust assets.

33. Montague had full knowledge and responsibility for the handling of Midwest Gourmet and/or Fox & Obel's PACA trust undertakings.

34. Vulpes knowingly purchased certain assets from Midwest Gourmet subject to the statutory trust pursuant to the PACA 7 U.S.C. § 499e(c)(4) and became an additional trustee of the PACA trust property.

35. At all times relevant to this action, Bolton was a person in a position to control substantially all aspects of Vulpes' business undertakings.

36. Bolton controlled and managed Vulpes' business operations and had control over Vulpes' financial dealings, including those involving the PACA trust assets.

37. Bolton had full knowledge and responsibility for the handling of Vulpes' PACA trust undertakings.

38. At all times relevant to this action, the Principals were persons engaged in the business of buying or selling Produce.

39. Principals were statutory trustees of the PACA trust and were required to maintain the trust assets in such a manner as to ensure there were, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations such as that owed to Plaintiff. As trustees of the PACA trust, Principals held fiduciary relationships with Plaintiff.

40. Because Plaintiff's invoices have not been paid from PACA trust assets as its bills fell due, Plaintiff has reason to believe Principals dissipated the PACA trust or transferred trust

assets to entities having claims which are subordinate to the Plaintiff's claims to the detriment of the Plaintiff and all other equally situated and properly qualified PACA trust beneficiaries.

41.     Principals continue to hold any and all PACA Trust assets having come into their individual possession as trustees for Plaintiff's beneficial interests in the PACA trust.

42.     Principals are personally liable to Plaintiff, which liability is joint and several with any third parties having received any PACA trust assets with actual or constructive notice of the breach of the PACA trust, for the dissipation of the PACA trust to the extent of $24,425.62, plus further interest and collection costs, including attorneys' fees, to be satisfied from the personal assets of the Principals.

## COUNT IV.

### DISGORGEMENT OF PACA ASSETS
### 7 U.S.C. § 499e(c)(4)

#### Vulpes

43.     Plaintiff realleges paragraphs 1 through 16.

44.     Vulpes purchased certain assets from Midwest Gourmet which are subject to the statutory trust pursuant to the PACA 7 U.S.C. § 499e(c)(4).

45     Vulpes is in possession, custody and control of significant amounts of PACA trust assets for the benefit of Plaintiff and similarly situated PACA trust beneficiaries.

46.     Despite written demand that the PACA trust assets be turned over, Vulpes failed and refused to disgorge these assets to unpaid PACA trust beneficiaries such as Plaintiff.

47.     As a direct result of Vulpes' failure to turn over PACA trust assets in its possession, Plaintiff suffered damages which are covered under the PACA trust in the current amount of $24,425.62, plus further interest and collection costs, including attorneys' fees.

48. Plaintiff seeks an Order directing Vulpes to immediately turn over to Plaintiff, the $24,425.62, plus further interest and collection costs, including attorneys' fees, owed to Plaintiff, and all other PACA trust assets for the benefit of all PACA trust beneficiaries with valid PACA claims.

**FOR THESE REASONS,** Plaintiff seeks the entry of an Order providing as follows:

A) As to Count I, directing the Defendants to assign, transfer, deliver and turn over to Plaintiff, or a designated escrow agent, all of the above described PACA trust assets sufficient to allow liquidation of such assets to the extent necessary to replenish the PACA trust to a sufficient level to satisfy any and all qualified PACA trust claims.

B) As to Count I, entering a Final Judgment in favor of Plaintiff and against the Defendants, on a joint and several basis, in the current amount of $24,425.62, plus further interest and collection costs, including attorneys' fees, less any actual recovery on other Counts herein;

C) As to Count II, entering a Final Judgment in favor of Plaintiff and against Midwest Gourmet in the current amount of $24,425.62, plus further interest and collection costs, including attorneys' fees, less any actual recovery on other Counts herein;

D) As to Count III, entering a Final Judgment in favor of Plaintiff and against Principals, on a joint and several basis with the Defendants in Count I, finding that Principals' acts were a breach of their fiduciary duties to the PACA trust beneficiaries, resulting in a defalcation while acting in a fiduciary capacity, with damages to Plaintiff in the current amount of $24,425.62, plus further interest and collection costs, including attorneys' fees, less any actual recovery on other Counts herein;

E) As to Count V, directing Vulpes turn over to Plaintiff $24,425.62 plus further interest and collection costs, including attorneys' fees, and to turn over to

|   |   |
|---|---|
|   | Plaintiff or a designated escrow agent, all of the PACA trust assets in its possession to a sufficient level to satisfy any and all qualified PACA trust claims; |
| F) | As to Count V, entering a Final Judgment in favor of Plaintiff and against Vulpes in the current amount of $24,425.62, plus further interest and collection costs, including attorneys' fees, less any actual recovery on other Counts herein; and, |
| G) | Providing such other relief the Court deems necessary. |

Respectfully Submitted,

INDIANAPOLIS FRUIT COMPANY, INC.

By: s/Gretchen Wehrenberg Stewart
    One of Its Attorneys

David A. Adelman, Esq.
Gretchen Wehrenberg Stewart, Esq.
ADELMAN LAW OFFICES, P.C.
1901 N. Roselle Road, Suite 800
Schaumburg, IL 60195
Tel: 847/301-4341
Fax: 847/301-4342
adelmand@pacaenforcer.com
stewart@pacaenforcer.com

```
08CV2486 J. N.
JUDGE ANDERSEN
MAG. JUDGE KEYS
```

**EXHIBIT 1**

## PACA TRUST CHART

Claimant: Indianapolis Fruit Company, Inc.  
Date: 04/23/08

Debtor: Midwest Gourmet formerly dba Fox & Obel  
Vulpes LLC dba Fox & Obel  
Terms: Net 10 + 1.5% per month

| INVOICE NUMBER | DATE OF TRANSACTION | PAYMENT DUE | NOTICE DATE | ELAPSED DAYS | INVOICE AMOUNT † | CURRENT BALANCE | ACCRUED INTEREST * | TRANSACTION TOTAL | TRUST AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 365716 | 08/18/07 | 08/28/07 | 08/18/07 | 0 | $ 4,356.14 | $ 229.40 | $ 29.02 | $258.42 | $ 258.42 |
| 366747 | 08/17/07 | 08/27/07 | 08/17/07 | 0 | $ 3,282.50 | $ 118.75 | $ 15.02 | $133.77 | $ 133.77 |
| 373829 | 09/11/07 | 09/21/07 | 09/11/07 | 0 | $ 4,130.40 | $ 4,130.40 | $ 453.70 | $4,584.10 | $ 4,584.10 |
| 374601 | 09/13/07 | 09/23/07 | 09/13/07 | 0 | $ 3,680.80 | $ 3,680.80 | $ 404.32 | $4,085.12 | $ 4,085.12 |
| 374981 | 09/14/07 | 09/24/07 | 09/14/07 | 0 | $ 3,428.00 | $ 3,428.00 | $ 376.55 | $3,804.55 | $ 3,804.55 |
| 374124 | 09/15/07 | 09/25/07 | 09/15/07 | 0 | $ 3,207.35 | $ 3,207.35 | $ 352.31 | $3,559.66 | $ 3,559.66 |
| Collectin costs** | | | | | | | | $8,000.00 | $ 8,000.00 |
| TOTALS | | | | | $ 22,085.19 | $ 14,794.70 | $ 1,630.92 | $24,425.62 | $24,425.62 |

† Invoice Amount includes $667.25 of non-produce items, payment for which have been made.  
* Interest calculated through date listed above.  
Collection costs are estimated and included estimated attorneys' fees.